IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LYNETTE COOPER,  *

   Plaintiff,  *

v.  *

          *     Civil No. 24-1969-BAH

HOUSING AUTHORITY BALTIMORE
CITY ET AL.,  *

   Defendants.  *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM AND ORDER

Plaintiff Lynette Cooper ("Plaintiff") filed the above-captioned complaint *pro se* together with a motion for leave to proceed in forma pauperis, ECF 2, and a motion to appoint counsel, ECF 3. The motion for leave to proceed in forma paupers shall be granted. Plaintiff also filed multiple correspondence with additional information, ECFs 5, 8, and 9, as well as almost 700 pages of exhibits, ECF 6, and a table of contents, ECF 7.

Section 1915(e)(2)(B) of 28 U.S.C. requires this Court to conduct an initial screening of this complaint and dismissal of any complaint that (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see also Lomax v. Ortiz-Marquez,* 140 S. Ct. 1721, 1723 (2020). The Court is mindful of its obligation to construe liberally a complaint filed by a self-represented litigant. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, liberal construction does not mean that this Court can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990); *see also Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (stating

a district court may not "conjure up questions never squarely presented"). Here, the Court concludes that the complaint is likely frivolous, or, at minimum, fails to state a claim for which relief can be granted.

Plaintiff brings suit against the Housing Authority for Baltimore City ("HABC"), the Baltimore County Housing Authority, and eighteen individuals. *See* ECF 1, at 1–5. She invokes this Court's federal question jurisdiction for unlawful retaliation in violation of Section 818 of the Fair Housing Act, 42 U.S.C. § 3617. *See id.* at 6. Plaintiff seeks $20 million in compensation. *Id.* at 7. Attached to Plaintiff's complaint is a 60-page document entitled "Statement of Claim." *See* ECF 1-1. The document contains a meandering narrative, detailing a host of issues (of varying levels of plausibility) with the HABC, its employees, employees of various apartment buildings, members of the general public, and public officials. *See generally id.* Plaintiff's claims boil down to accusations of unknown people entering various apartments where she has lived, unknown people following her, releasing "chemical bombs" into her home and car, and tampering with her food. *See e.g.*, *id.* at 10 ("On April 1, 2022 someone entered my unit, went through my personal belongings, then breached my security cameras. During a call, Keesha Bethea identified herself as Keesha, but asked for some guy. It was terrifying because I didn't understand why someone keep entering my unit and going through my personal belongings."), at 12 ("Someone tampered with my milk by filling the bottle up with the water."), at 12 ("They melted the brown substance in the toaster oven, and poured the chemicals into the small coffee pot."), at 12 ("And for some reason these people are able to locate my vehicle. Placing chemicals inside or on the outside of my vehicle. It's the hot season so the chemicals are more effective."), at 14 ("A chemical bomb was thrown at my window."), at 49 (explaining that while driving her car, Plaintiff noticed the truck in front of her driven by "the scrunch face Hispanic man . . . that follows me around in the Towson

neighborhood" and then finding "a white substance-chemicals thrown onto [her] vehicle's windshield and hood"). She appears to believe she is being intentionally targeted with these chemicals, including a "[w]hite [c]rystal[-]like" and "[b]rown mud[-]like" substance. *See id.* at 50. Plaintiff attributes these actions to certain ethnicities,[1] as well as to Donald Trump and his supporters. *See id.* at 15 ("I believe these chemicals came from China and [T]rump got them to bring [and] use them here in America."), at 18 ("I thought about how the former president went to China and during the former president Donald [T]rump's visit, [T]rump obtained these hazardous chemicals, that was applied in the areas of North & Greenmount Avenues, . . . [which] killed [Plaintiff's sister] Tonya Cooper."). Plaintiff connects these alleged events to issues she has experienced with her electronics, including her phone, computer, and email accounts. *See id.* at 5 ("I noticed that someone has deleted my text from Saul, as well as other texts. They deleted my phone contacts too. . . . I also found on my desktop email contacts for people I don't know. My computer has been breached over the years."), at 50 ("The [Attorney Grievance Commission] emailed me the documents and those documents mysteriously disappeared off my computer.")

---

[1] Plaintiff repeatedly singles out apparent strangers she identifies as Chinese, Hispanic, and African. For example, she recounts the following about an experience while shopping:

> While shopping in Walmart. I saw this Chinese man looking at food products taking photos of the food. In another section I saw a Chinese female taking photos of things like baby items. I saw the same woman at St Joseph Hospital taking photos of the roof top to a senior or medical building. I went to take a photo of the Chinese female, but by the time I turned around the Chinese female was gone. It was strange to me. At a later date, I watched a Chinese male & female come out of the Giants supermarket with 2 bags of collard greens. The way they were dressed with multiple masks & gloves, the handling of those 2 bags of greens, it was like a science project to be used. I've heard how the Chinese people own land in America, the Chinese people are growing food. I find it suspect. I keep having these encounters with Chinese people.

ECF 1-1, at 7. Many of the anecdotes in Plaintiff's complaint follow this same pattern of stream-of-conscious observations, largely of innocuous behavior of strangers.

In correspondence to the Court, Plaintiff explains that she seeks to be safe from "the chemicals" in her apartment and the "random people tracking down [her] vehicle], and putting these hazardous chemicals on and inside." ECF 8, at 1. She further clarifies that "those people are the former president Donald [T]rump supporters." *Id.* at 2. Plaintiff filed further correspondence explaining that she received suspicious texts from USPS which "look innocent but "the[y're] not," which she also received "while at Center Point Apts."[2] ECF 9. She purports that later, "chemical bombs were being released in [her] unit" as well as in her car. *Id.*

The most plausible of Plaintiff's claims concern allegations that the HABC retaliatorily failed to pay its portion of Plaintiff's rent which led to multiple failure to pay rent notices.[3] *See* ECF 1-1, at 2–3. However, even reading the self-represented complaint liberally, as the Court must, *see Erickson*, 551 U.S. at 94, Plaintiff fails to state a claim for relief. Plaintiff does not explicitly state for what she believes the HABC has retaliated against her but alludes to the retaliation stemming from events that took place in 2015. *See* ECF 1, at 9 ("I suffered because of their retaliatory acts. . . . My life has forever changed in 2015 . . . ."), at 33–34 (detailing events related to a meritorious 2015 sexual harassment case), at 37 ("Because of Cary Hansel's [an attorney involved in the 2015 sexual harassment case] deception HABC faulted me and has been retaliatory with me to date."). Plaintiff has brought two prior cases alleging unlawful retaliation by the HABC for the her success in the 2015 case, both of which were dismissed—the second for

---

[2] Attached to this correspondence are several screenshots of text messages that appear to be a common scam, purporting to alert a customer to the United States Postal Service's inability to deliver a package. *See Smishing: Package Tracking Text Scam*, United States Postal Inspection Service (June, 26, 2024), https://www.uspis.gov/news/scam-article/smishing-package-tracking-text-scams.

[3] It does not appear that Plaintiff was ever evicted because of the HABC's actions.

4

being res judicata to the first. *See Cooper v. HABC et al.*, Civ. No. 23-215-GLR, ECF 23 (Mar. 28, 2023) (order dismissing complaint as barred by res judicata and collateral estoppel because of *Cooper v. Timmins et al.*, Civ. No. 22-857-JMC). Thus, to the extent Plaintiff's complaint can be construed as plausibly stating a claim for unlawful retaliation in violation of the Fair Housing Act, any claim for retaliation stemming from Plaintiff's successful 2015 lawsuit is also likely barred by res judicata. Even if Plaintiff's allegations in the current complaint fall outside the scope of the prior dismissed suits such that they are not barred by res judicata, Plaintiff has not alleged sufficient facts to causally connect her involvement in the 2015 suit with the HABC's actions alleged here.

The remainder of Plaintiff's complaint amounts to complaints which the Court regrettably cannot help Plaintiff resolve, let alone address. This Court lacks subject matter jurisdiction over "obviously frivolous" claims. *Hagans v. Lavine*, 415 U.S. 528, 537 (1974) (quoting *Hannis Distilling Co. v. Baltimore*, 216 U.S. 285, 288 (1910)); *see also Mallard v. U.S. Dist. Ct. for S.D. of Iowa*, 490 U.S. 296, 307–08 (1989) (noting court authority to dismiss frivolous claims exists even in the absence of a statutory provision providing such authority); *Alexander v. Dep't of Army*, Civ. No. DLB-21-2285, 2021 WL 4417080, at *1 (D. Md. Sept. 24, 2021) (listing cases), *aff'd sub nom.*, *Alexander v. Dep't of the Army*, No. 21-2131, 2021 WL 6101837 (4th Cir. Dec. 22, 2021), *cert. denied*, 143 S. Ct. 98 (2022). The Court may sua sponte dismiss complaints such as this one under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. *See Denton v. Hernandez*, 504 U.S. 25, 32 (1992) ("[A] finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible...."); *Glendora v. Jacobs*, Civ. No. MJG-03-1166., 2003 WL 23274427, at *1 (D. Md. Apr. 30, 2003) (dismissing *sua sponte* a "rambling, nonsensical complaint"), *aff'd,* 71 F. App'x 269 (4th Cir. 2003)

In addition to its "inherent authority" to dismiss "frivolous complaints," *Chong Su Yi v. Soc. Sec. Admin.*, 554 F. App'x 247, 248 (4th Cir. 2014), a court can also dismiss a complaint sua sponte for failure to state a claim, *Webb v. EPA*, 914 F.2d 1493 (Table) (4th Cir. 1990).  However, "district courts may only exercise their authority to sua sponte dismiss inadequate complaints if the procedure employed is fair to the parties.  Namely, the party whose complaint stands to be dismissed must be afforded notice and an opportunity to amend the complaint or otherwise respond." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 291 (4th Cir. 2021).  The Court will therefore direct Plaintiff to show cause why, to the extent any of her claims can be construed as non-frivolous, the complaint should not be dismissed.  Plaintiff is forewarned that failure to show cause will result in dismissal of the complaint without further warning.

The Court will also deny Plaintiff's motion to appoint counsel.  ECF 3.  Under 28 U.S.C. § 1915(e)(1), the Court has discretion to appoint counsel for indigent civil litigants in exceptional circumstances. *See Bailey-El v. Hous. Auth. of Balt. City*, 185 F. Supp. 3d 661, 670 (D. Md. 2016) (citing *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975), *aff'd in part, vacated on other grounds,* 686 F. App'x 228 (4th Cir. 2017).  Whether exceptional circumstances exist is a fact-specific determination. *See Whisenant v. Yaum*, 739 F.2d 160, 163 (4th Cir. 1984)*, abrogated on other grounds by Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989).  Exceptional circumstances exist where (1) "the plaintiff 'has a colorable claim'" and (2) "considering the claim's objective complexity and the plaintiff's subjective abilities, . . . the plaintiff 'lacks the capacity to present it.'" *Jenkins v. Woodard*, ___ F. 4th ___, No. 22-6197, 2024 WL 3490967, at *4 (4th Cir. July 22, 2024) (quoting *Whisenant*, 739 F.2d at 162).  In *Jenkins*, the Fourth Circuit recently emphasized that in determining whether exceptional circumstances warrant appointment of counsel to a civil litigant, a district court should consider a litigant's carceral status, educational background, legal

6

understanding, mental illness, and ability to access both legal research materials and evidence, as well as whether the case depends on the competing credibility of witnesses, who the pro se litigant would have difficulty cross-examining without the aid of a lawyer.  2024 WL 3490967, at *4

Appointment of counsel is not warranted here, as Plaintiff does not appear to have a colorable claim.  Even if she did, the Court does not find that exceptional circumstances warrant appointment of counsel here.  Plaintiff has filed numerous suits in this Court, she is not presently incarcerated, and the outcome of her case does not depend on weighing witness credibility.  As such, Plaintiff's motion to appoint counsel, ECF 3, is denied.

Accordingly, it is this 9th day of August, 2024, by the United States District Court for the District of Maryland, hereby ORDERED that:

1. Plaintiff is DIRECTED to SHOW CAUSE by August 30, 2024, why her complaint should not be dismissed;
2. Plaintiff's motion to proceed in forma pauperis, ECF 2, is GRANTED;
3. Plaintiff's motion to appoint counsel, ECF 3, is DENIED;
4. Plaintiff IS FOREWARNED that failure to comply with this Order in the time specified will result in dismissal of this case without further notice; and
5. The Clerk SHALL PROVIDE a copy of this Order to Plaintiff.

/s/
Brendan A. Hurson
United States District Judge